STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

ANTHONY PERNA,                                             Case No. 1:22-CV-292 MIS/KRS

**Plaintiff,**

v.

**THE BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO**

**FIRST AMENDED COMPLAINT**

This is a claim for damages pursuant to the New Mexico Whistleblower Protection Act for retaliatory discharge of a public employee, and pursuant to the Federal Fair Labor Standards Act of 1938 (29 U.S.C. §201, et seq.) for failure to pay overtime. Plaintiff demands a jury trial.

**Parties and Jurisdiction**

1. Plaintiff Anthony Perna is a resident of the State of New Mexico, County of Bernalillo, and a former employee of the Bernalillo County Sheriff's Office. Plaintiff was a public employee as defined by the New Mexico Whistleblower Protection Act. NM Stat. §10-16C-2 B (2022 Edition).

2. Defendant Board of County Commissioners of the County of Bernalillo is the proper entity to sue pursuant to New Mexico law. NM Stat. §4-46-1 (2022 Edition). It is a political subdivision of the state, created under either general or special act, that receives or expends public money from whatever source derived. NM Stat. §10-16C-2 (2022 Edition).

3. Defendant Board of County Commissioners of the County of Bernalillo is a political subdivision of the State of New Mexico as defined by 29 U.S.C. §203C. Defendant is a public employer as defined by NM Stat. §10-16C-2C (2022 Edition).

1

4. Defendant Board of County Commissioners of the County of Bernalillo is a public agency as defined by 29 U.S.C. §203(x) and was Plaintiff's employer as defined by the Fair Labor Standards Act of 1938. 29 U.S.C. §203(d).

5. This is the proper venue for this matter since both Plaintiff and Defendants are residents of this Districts and the acts complained of herein occurred in Bernalillo County. This Court has jurisdiction of this action pursuant to 29 U.S.C. §216 (2021 Edition).

## Background Facts

6. On July 19, 2021, Plaintiff Anthony Perna started working as a cadet for the Sheriff's Office of Defendant Board of County Commissioners of the County of Bernalillo (herein County).

7. At the time his employment started with Defendant County, Plaintiff Perna had already served 4.5 years as a licensed police officer for the City of Albuquerque, including completion of the City's basic training academy certified by the NM Department of Public Safety.

8. Defendant County of Bernalillo required that Plaintiff Perna attend its own basic training Academy, and Plaintiff Perna did so, along with 23 other cadets.

9. The Drill Instructors who supervised the cadets during the academy training were Deputy Mark Cerna and Deputy Joshua Mora.

### Plaintiff Performed at the Top of the Class at the Academy.

10. Drill Instructors Cerna and Mora recognized Plaintiff Perna as a leader. On July 20, 2021, they assigned Plaintiff and another cadet as the first "Class Leaders," a rotated position. Both Cerna and Mora stated to Plaintiff Perna that they selected him as Class Leader due to his past experience and maturity.

11. Drill Instructors Cerna and Mora also assigned Plaintiff Perna to more duties than were assigned to any other cadet, including the duties of flag detail, drill and ceremony assistance, canteen duty, and class roster duty.

12. Plaintiff Perna soon showed his leadership skills by changing a prior instruction imposed by Drill Instructors Cerna and Mora that both male and female cadets would change clothes – from physical fitness apparel to the uniform – in the same breakroom. Perna was concerned about the safety of the female cadets and the potential for sex harassment complaints against his employer so he instructed the class to not change in front of the opposite sex, and he designated separate changing areas.

13. As Class Leader, Plaintiff Perna gained the respect of the other cadets. Many cadets told him that they appreciated his leadership, experience, decision-making ability, and his genuine regard for the class members' well-being.

14. From July 19 through August 17, 2021, the Drill Instructors held weekly counseling sessions individually with each cadet, including Plaintiff Perna. In every weekly session, Drill Instructors stated that Perna was exceeding the standards and doing well.

15. On July 29, 2021, almost every cadet in the class, along with both Drill Instructors, congratulated or praised Plaintiff Perna for his high physical training scores in pushups, sit-ups, the 1.5 mile run, and the 300 meter sprint. Even though Plaintiff Perna was the oldest cadet in the class (age 35), was 6'2" and weighed 230 pounds, he had the third fastest time for the 1.5 mile run in the entire class.

16. Plaintiff Perna's evaluation for the first week of training, dated July 30, 2021, rated Perna with an overall score of 35. It shows that he scored 100% on a weekly quiz "which was

above the class average." The evaluation cites Plaintiff as an effective communicator with instructors and his class and notes that he makes decisions in a timely manner.

17. Plaintiff Perna's second week evaluation, dated August 3, 2021, rated Perna with an overall score of 35. It related that "several Cadets stated Cadet Perna is a great leader and helps motivate the class." The evaluation stated that Perna "scored an 83.95% on Exam #1 which is above the class average," and that Perna passed all areas of the physical test "at or above the Exit Standard." The evaluation stated that Perna "demonstrates a working relationship with instructors and Academy Staff" and encouraged Perna to "continue being a leader and helping fellow Cadets."

18. Weeks 3 and 4 of the academy training were the Law Block, taught by three Assistant District Attorneys. These instructors conveyed numerous compliments to Perna for his participation, scenarios, and effective arguments.

19. Plaintiff Perna's third week evaluation, dated August 10, 2021, gives very positive feedback, including:

> 2) Cadet is accepting feedback and is using this feedback to improve daily. 5,6) Cadet is currently the class leader for squads 1&2. Cadet does a good job with relaying information to and from his classmates. Cadet has done a good job organizing his class and providing good leadership in ways they can understand. Cadet is usually good with not only having solutions for problems but able to foresee possible problems in the future. 7,8,10) Cadet has a good working relationship with classmates to include his Drill Instructors and staff. Cadet shows up to the academy ready to learn with a great attitude towards this process. Cadet participates in all team building and morning exercises and pushes himself to become better.

20. On August 17, 2021, Defendant Sheriff Gonzales selected Plaintiff Perna to speak to the entire Family Night congregation with respect to the Albuquerque Police Department.

21. On August 19, 2021, two crisis intervention technique (CIT) instructors gave high praise to Plaintiff Perna on his CIT scenarios. Among other compliments, the instructors told

Perna that he remained calm and that his techniques came out naturally. CIT instructors are detectives who are a part of the BSCO's Crisis Negotiation Team and Crisis Intervention Unit.

22. Plaintiff Perna's fourth week evaluation, dated August 20, 2021, stated that he displayed "good communication skills along with problem solving abilities" and commended him for speaking up, attempting to solve problems during team building exercise, attempting to make everyone work as a team, and participating in classroom activity." In addition, the evaluation had these positive items:

> Cadet demonstrates a working relationship with instructors and Academy Staff. Cadet arrives at the academy in a timely fashion and will commonly participate in classroom activity. We would continue to motivate this Cadet to keep asking questions and volunteering for scenarios.

23. During weeks 5 and 6, from August 24 through September 3, the firearms instructor assigned to Plaintiff Perna, along with other firearms instructors and the Rangemaster, gave Perna excellent verbal reviews of his shooting, demeanor and overall performance. The assigned firearms instructor – also a Field Training Officer – told Perna that he would like to have Perna ride in his police vehicle as his "recruit" when he was the Field Training Officer during On the Job Training.

24. During firearms training, Drill Instructor Mora praised Plaintiff Perna for being a "good shot."

25. On August 23, 2021, Plaintiff Perna witnessed the Academy Drill Instructors commit a burglary and an illegal search and seizure of a cadet's vehicle. The Drill Instructors ordered the cadets out to the parking lot, asked all cadets if their personal vehicle doors were secure, and then proceeded to pull on all the vehicle door handles. Two of the vehicle handles were unlocked. Without a warrant and without consent from the vehicle owners – one of whom was a cadet – the Drill Instructors entered the cadet's vehicle, took several items out of the front seat,

back seat and rear hatch of the cadet's vehicle, and placed the items on the ground outside the vehicle.

26. In addition, on two separate days, the Drill Instructors used the personally owned vehicle of a cadet for a training exercise of the cadets involving a practice run through of an obstacle course, exposing both the cadets and the County to liability in the event of an injury, and against the law. Use of a personal vehicle was not even necessary since several county vehicles were available for training. Moreover, it was in violation of the Firing Range Safety Brief/MEDVC Plan, Section Misc 5, which states, "Personally owned vehicles are only to be allowed in the cadet parking lot."

27. On August 25, 2021, Drill Instructors gave Plaintiff Perna his highest rating to date, a 36, and Perna scored 100% on his weekly examination. Drill Instructors gave Perna a very positive review, including:

> 2 – Cadet is accepting of feedback and criticism as he learns new things each day. Cadet has approached Drill Instructors during Cadet counseling and asked about ways he could improve. This initiative shows Cadet's eagerness to improve and become better.
>
> …5 – Cadet continues to improve with his verbal communication skills with his classmates and Instructor Staff. Cadet was the previous class leader and has not shown any signs of an inability to properly make decisions or communicate with others.
>
> …7,8 – Cadet is working on building relationships with his classmates. Cadet shows up every day and ready to learn. Cadet will commonly engage in classroom learning and ask questions at the conclusion of the day. With the Cadet moving forward with their training, this will benefit the Cadet greatly as communicating is a key part of this career. This engagement and participation in classroom instruction also shows his confidence and command presence. 9 – During this week Cadet scored a 100% on his exam, which is above the class average.

28. On September 9, 2021, the Deputy Sheriff cadet mentor said on multiple occasions that Plaintiff Perna was "squared away," meaning dressed in accordance with high police standards, and doing very well in the class.

29. From September 14-16, 2021, driving instructors praised Plaintiff Perna for his good emergency driving skills and his personal demeanor.

## Count I.
## Plaintiff Complained, and Defendant Retaliated and Fired Him
## in Violation of the NM Whistleblower Protection Act.

30. On August 24 and 25, 2021, Plaintiff Perna verbally complained to Drill Instructors about actions and failures to act that Perna believed in good faith constituted unlawful or improper acts as allowed and protected by NM Stat. §10-16C-3 and concerning the following:

- The illegal burglary and search and seizure of a cadet's vehicle that the Drill Instructors committed on August 23, 2021;

- The hazardous demand to do excessive push-ups on small, sharp gravel without gloves which was an abuse of authority and a threat to the safety of cadets who had to use their hands for firearm training;

- Excessive exercises demanded by the Drill Instructors which were causing cadets personal injury as well extra cost and expense for cadets due to rips and ruin in the uniforms which constituted an abuse of authority.

31. On or about September 3, 2021, the cadets were ordered by DI Cerna and Mora to leave their weapons in the range house and regroup outside at the firing range to conduct physical training and "team building." As the DIs started to walk out of the range building, Plaintiff Perna casually asked both of the DIs if they wanted someone to stay behind to secure the weapons. Plaintiff knew from his experience that an officer should never leave their department issued weapons unsecured. DI Mora responded with, "Negative, leave the weapons."

32. On September 9, 2021, Drill Instructors Cerna and Mora indicated their retaliatory motive against Plaintiff by bringing up the safety concern he had had with the security of the weapons and telling him that it indicated he was not trusting of the Instructors, that he was not "tactful," and that security of the weapons building, "is not your problem."

33. On September 10, 2021, in retaliation for Plaintiff Perna's verbal complaints on August 24 and 25, 2021, and in retaliation for Plaintiff having raised a safety concern regarding security of weapons on September 3, 2021, Drill Instructors Cerna and Mora gave Perna a drastically lower evaluation than he had ever received - from an average score of 34.2 for the previous 5 evaluations, to a score of 20, a drop of 41.5%. The evaluation stated that "Starting week #6," Perna started to show an "undesirable attitude" and an "unwillingness to cooperate with the team." The evaluation narrative presented a detailed defense of the Drill Instructor's decision to search a cadet's vehicle in the parking lot.

34. This evaluation shows retaliatory motive due to: 1) the proximity of time from Perna's verbal complaint to the evaluation, 2) the proximity of time from the Drilling Instructor's criticism of Plaintiff's expressing concern for the security of the weapons to the evaluation, 3) the drastic switch in evaluation without cause from "shows up every day and ready to learn" to "undesirable attitude," and from "working on building relationships with his classmates" to "unwillingness to cooperate with the team," and 4) the placement of the Instructor's defense of the search and seizure right in the body of the evaluation, indicating its importance in formulating the evaluation.

35. On September 13, 2021, near the close of business, Plaintiff Perna submitted online a response to evaluation 6 in which he complained about:

- The illegal burglary and search and seizure of a cadet's vehicle that the Instructors committed on August 23, 2021;

- The use of a personally-owned vehicle for cadet training exercises when county vehicles were available, thereby creating potential liability for the County and for the vehicle owner;

- The hazardous demand to do excessive push-ups on small, sharp gravel without gloves which was a threat to the safety of cadets who had to use their hands for firearm training; specifically, Perna stated:

    > Also the small sharp gravel may scrape, cut or impale our hands. This will likely have a negative impact on the Cadets in firearm manipulations that will be occurring for the next week and a half. Cadets will not be able to safely and properly handle the weapons with live ammunitions which can result in an accidental discharge or worse, a gunshot wound to a Cadet or Deputy.

- Excessive exercises demanded by the Drill Instructors which were causing cadets personal injury as well extra cost and expense for cadets due to rips and ruin in the uniforms.

36. In retaliation for Plaintiff Perna's verbal complaints of August 24-25, 2021, his expression of concern over the protection of weapons, and his written complaints of September 13, 2021, Drill Instructors Cerna and Mora recommended the termination of Plaintiff Perna on September 15, 2021.

37. In retaliation for Plaintiff Perna's verbal complaints of August 24-25, 2021 and his written complaints of September 13, 2021, Defendant prepared the notice of termination on September 16, 2021, and Defendant terminated Plaintiff on the morning of September 17, 2021. Defendant Undersheriff Sid Covington signed the written termination on behalf of Sheriff Mannie Gonzales.

38. As a result of the termination, Plaintiff Perna has lost his wages of $62,400 annually, plus overtime pay and benefits, and he has suffered emotional and psychic pain.

39. Despite numerous efforts at employment applications and a stellar career background, Plaintiff has not been able to find employment due to the termination by Defendant.

40. Pursuant to NM Stat. §10-16C-4, Plaintiff is entitled to reinstatement with the same seniority status that he would have had but for the violation of the Whistleblower Protection Act, two times the amount of back pay with interest on the back pay, and compensation for special damages sustained as a result of the violation of the Whistleblower Protection Act, plus litigation costs and reasonable attorney fees.

Wherefore premises considered Plaintiff prays as set forth below.

### Count II
### Violation of the FLSA, 29 U.S.C. § 207
### Failure to Pay Overtime Wages

41. Plaintiff Perna worked over 40 hours every week during the 9 weeks that Plaintiff worked for Defendant County, from July 19, 2021 to September 17, 2021.

42. Plaintiff Perna worked overtime from 4 to 14 hours every workweek, for a total of 89 overtime hours.

43. Defendant did not pay Plaintiff any compensation whatsoever for his overtime labor.

44. Plaintiff's wage was $30.00 an hour, and he was entitled to overtime pay of $45.00 an hour for each hour of overtime.

45. Defendant did not pay Plaintiff the $4,005.00 that Plaintiff was entitled to in overtime pay.

46. Defendant's failure to pay one and one-half times the regular rate at which Plaintiff was employed (overtime pay) to Plaintiff is a violation of 29 U.S.C. §207 Maximum Hours.

47. Pursuant to 29 U.S.C. §216(b) (2021 Edition), Plaintiff is entitled to liquidated damages equal to the amount of unpaid overtime pay.

46. Pursuant to 29 U.S.C. §216(b) (2021 Edition), Plaintiff is entitled to reasonable attorney fees and costs.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

1. General damages in an amount to be proved at trial;
2. Double the amount of back pay as set forth in NMSA 1978, §10-16-C4;
3. Liquidated damages equal to the amount of unpaid overtime pay;
4. Damages for pain and suffering in an amount to be proved at trial.
5. Reasonable attorney fees;
6. Costs of suit;
7. Interest on the backpay;
8. Special damages; and
9. For such other relief as the Court deems proper.

Respectfully submitted.

*/s/ Steven K. Sanders*___
**Steven K. Sanders and Associates**
Attorney for Plaintiff
StevenKSanders@aol.com
820 Second Street NW
Albuquerque, NM 87102
(505) 243-7170
(505) 243-7755 fax

*s/ Pia Gallegos*
**Pia Gallegos Law Firm, P.C.**
Attorney for Plaintiff
pia@gallegoslaw.com
116 14th St. S.W.
Albuquerque, NM 87104
(505) 842-8484, (505) 220-9985 (direct)
(505) 842-8200 (fax)

I certify that I served this First Amended Complaint on Deborah Wells of Kennedy, Moulton & Wells, P.C., at ddwells@kmwpc.com, on July 14, 2022 by electronically filing it with the Pacer system.

*/s/ Pia Gallegos*