## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

———————————

ANTHONY PERNA,

     Plaintiff,

v.                            Case No. 1:22-cv-00292-MLG-KRS

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO,

     Defendant.

### MEMORANDUM OPINION AND ORDER GRANTING LEAVE TO AMEND

Plaintiff Anthony Perna, a former cadet for the Bernalillo County Sheriff's Office ("BCSO"), brings claims under the New Mexico Whistleblower Protection Act ("NMWPA"), NMSA 1978, § 10-16C-1 *et seq.* (2010), for retaliatory termination and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 (2022), for failure to pay overtime wages. Doc. 23 at 7-11. He now seeks to amend his complaint to add a claim of retaliatory termination pursuant to the FLSA and to bolster allegations material to his NMWPA claims. The relevant deadline has lapsed, so Perna seeks the Court's countenance for his request. Doc. 52 at 2-3. Defendant Board of County Commissioners of Bernalillo County ("the County") opposes Perna's motion. After considering the parties' filings—including the County's surreply, Doc. 90—and having held a hearing on the matter, the Court grants the motion. Explanation for that decision is as follows.

### BACKGROUND

During his brief time with BCSO (approximately two months), Perna claims to have witnessed several acts he deems inappropriate or unlawful including: burgling and searching a cadet's vehicle, Doc. 23 at 5 ¶ 25; using a cadet's personal vehicle for a training exercise, *id.* at 6 ¶ 26; commanding cadets to perform bare-handed push-ups on sharp gravel knowing these cadets

1

would later use their hands for firearm training, *id.* at 7 ¶ 30; and requiring cadets to perform exercises excessively, which allegedly caused injuries and damage to the cadets' uniforms, *id.* Perna also expressed apprehension about the safe storage of weapons. *Id.* at 7 ¶ 31. Perna claims that he was retaliated against and ultimately fired after voicing his concerns. *Id.* at 8-9 ¶¶ 35-37. He subsequently filed suit alleging violations of the NMWPA and FLSA. *Id.* at 7-11.

Per the operative scheduling order, Perna had until July 25, 2022, to amend his complaint. Doc. 17 at 2. That deadline lapsed, but Perna nevertheless requested leave to amend claiming he learned new information during the discovery process that was previously unknown and unavailable. Doc. 52. Specifically, Perna asserts that he uncovered evidence (after July 2022) suggesting he was targeted after filing a complaint with the United States Department of Labor ("DOL") for unpaid overtime wages. *See id.* at 17, 20-21. The County vigorously challenges Perna's take on the relevant factual background, and it asserts Perna knew or should have known of facts relevant to his proposed amended pleading prior to the appliable deadline.[1] Doc. 62 at 10-16.

---

[1] A chronology of contentions material to Perna's motion is provided to assist the reader in understanding the fact-intensive discussion below:

- August 27, 2021—At some point prior to this date, Perna speaks to his father-in-law, Richard Davis, about BCSO's alleged failure to pay overtime; on this date, Davis files a complaint with DOL. Doc. 62 at 12.
- August 31, 2021—DOL notifies BCSO's Internal Affairs division that it is initiating an investigation into BCSO's compliance with the FLSA. *Id*.
- September 13, 2021—Perna contacts DOL investigator Brooke Percival. In that message, Perna indicates that he is aware Davis contacted the Captain of Internal Affairs. *Id*. at 10-11.
- September 17, 2021—Perna's employment with BCSO is terminated. *Id*. at 16 n.5.
- September 20, 2021—Percival represents that Richard Davis is the named complainant in the submission to DOL, and Percival tells Perna that his name does not appear anywhere on the complaint form. *Id*. at 11-12.
- February 28, 2022—Perna files the present suit in state court. Doc. 2 at 1.
- April 20, 2022—The County removes the case to federal court. *Id*.
- July 25, 2022—The deadline for Perna to amend the pleadings closes. Doc. 17 at 2.

**LEGAL STANDARD**

A plaintiff may amend his complaint once as a matter of course, after which the plaintiff must seek consent from the opposing party or leave of the court. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." *Id.* "The purpose of the Rule is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotation marks omitted). Courts typically favor allowing plaintiffs to amend their complaints absent a showing of "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). The district court retains broad discretion to grant or deny such leave. *See Cohen v. Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010).

If the deadline for amendments set in the scheduling order has passed, a party may only amend his complaint if he demonstrates good cause for seeking modification under Federal Rule of Civil Procedure 16(b)(4), in addition to satisfaction of the Rule 15 standard explained above.

---

- August 25, 2022—Perna receives the Internal Affairs investigation file in its entirety. Doc. 62 at 14-15.
- September 8, 2022—Perna refers to a person named Megan Phelps as a potential witness in an email to Davis. Doc. 64-1 at 8-9. Davis suggests Phelps was given an explanation as to why Perna was fired. *Id.* at 2.
- October 31, 2022—Lieutenant Pete Golden verifies at his deposition that Undersheriff Sid Covington told him that "the Chain indicated" Perna should be fired if he violated the Cadet Manual. Doc. 72 at 5, 6. A directive from the undersheriff was "considered to be as if it came from the sheriff himself." *Id.* at 6.
- November 14, 2022—Perna moves to amend his pleading. Doc. 52.
- November 17, 2022—The County receives the declaration of Megan Phelps. Doc. 55 at 3-4; Doc. 62 at 16. There, Phelps says Undersheriff Covington told her that Perna had been fired because "he had filed the [DOL] complaint and was trying to get other cadets to join the complaint[.]" Doc. 55 at 4.

3

*See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). The "good cause" standard "requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Id.* (internal quotation marks and brackets omitted). It may be satisfied where "a plaintiff learns new information through discovery[.]" *Id.* However, the good cause hurdle cannot be cleared in those instances where the movant "knew of the underlying conduct but simply failed to raise [their] claims." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (quoting *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015)) This determination is also left to the district court's discretion. *See Gorsuch, Ltd., B.C.*, 771 F.3d at 1240. Because there is a "rough similarity" between the "good cause" standard of Rule 16 and the "undue delay" standard of Rule 15, *see Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009) (quotations omitted), the analysis of the two standards overlaps.

## ANALYSIS

### I.      Good Cause

The parties' arguments regarding good cause focus on what Perna knew about the possibility of retaliation and when he knew it. Perna asserts that the DOL complaint itself was not sufficient to establish retaliation because he was not identified in that filing, he "did not know that his father-in-law had directly complained to the Sheriff's office about the failure to pay overtime," and he had no evidence "that the Sheriff's office knew of the DOL overtime complaint by Plaintiff." Doc. 52 at 4. But, as the County points out, these assertions are not entirely accurate. The record indicates that Perna was aware of his father-in-law's complaint as early as September 13, 2021, and BCSO was certainly aware of the complaint when the DOL notified them that it was beginning an investigation into the entity's compliance with the FLSA. *See* Doc. 62 at 10, 12.

In his reply, Perna clarifies that "the reason for not filing this claim . . . [earlier] was that Plaintiff had no evidence that [BCSO] was aware—from either the DOL or Richard Davis—that Plaintiff was involved in the complaint to the DOL." Doc. 72 at 4. The evidence bears this out: Perna was told that his name was not on the complaint, and his surname is not the same as Richard Davis's, potentially obfuscating their relationship to each other. *See* Doc. 62-9 at 6; Doc. 52 at 2 (representation to the Court that there was "no evidence that anyone in the Sheriff's Office knew that Davis was Plaintiff's father-in-law"). However, a month after discovery closed, Perna received an Internal Affairs investigation file that revealed a directive to recommend him for termination if he violated the Cadet Manual. *See* Doc. 72 at 4-5; Doc. 62-13.

The County also challenges the key factual contentions in Megan Phelps's declaration regarding the reasons for Perna's firing. It cites emails indicating Perna and Davis knew Phelps had a conversation with Undersheriff Covington about why Perna was fired, and that Perna possessed of this information as early as September 8, 2022. Doc. 64 at 2. However, Perna's knowledge regarding these facts was initially inchoate. Phelps did not initially disclose the information she had heard from Undersheriff Covington linking Perna's complaint to his termination. *See* Doc. 72-2 at 9 (14:6-25). Later, at the end of October 2022, the deposition of Lieutenant Pete Golden indicated that top-down directions to terminate cadets for academy manual violations—that is, the very directive revealed in the Internal Affairs file—were unusual, and this testimony solidified the factual predicate for alleging Perna's firing was pretextual and based on the DOL complaint. *See* Doc. 72-2 at 3 (40:14-21).

Given this background, although Perna possessed pieces of evidence that hinted at retaliation, it seems he did not possess all the information necessary to support his claim for FLSA

retaliation prior to the deadline to amend. Accordingly, the Court finds that the good cause requirement of Rule 16(b)(4) is satisfied.

## II.    Rule 15(a) Requirements[2]

### A.  Futility

The County next asserts that Perna's motion for leave to amend should be denied "because it is [f]utile." Doc. 62 at 18. In support of this position, the County notes "Sheriff [Manuel] Gonzales was the decision maker with regard to Plaintiff's termination" and Sheriff Gonzales was unaware that Davis is Perna's father-in-law. *Id.* at 19. The apparent takeaway is that because Sheriff Gonzales testified that he did not know Davis (the official complainant) and Perna were related, Sheriff Gonzales could not have retaliated against Perna for filing the complaint. *Id.* at 18-19. Perna does not respond to the futility argument in his briefing and his silence complicates the matter. *See generally* Doc. 72. However, the burden of showing futility lies with the party raising that argument—that is, with the County—and therefore the Court must still assess Perna's claims in the context of the FLSA's burden-shifting framework. *See Gutierrez v. Johnson & Johnson Int'l, Inc.*, 601 F. Supp. 3d 1007, 1018 (D.N.M. 2022).

To establish a prima facie case of FLSA retaliation, a plaintiff must show "(1) [he] engaged in protected activity under FLSA, (2) [he] suffered an adverse employment action contemporaneous with or subsequent to the protected activity, and (3) a causal connection between the protected activity and the adverse employment action." *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004). Lodging a complaint with the DOL for BCSO's alleged failure

---

[2] The County claims that Perna has not met the standard for amendment under Rule 15(a) based on futility, unfair prejudice, and undue delay. Doc. 62 at 16-20. Because the Court has already addressed claims of undue delay while discussing the "good faith" component of the Rule 16 inquiry, only the County's assertions of futility and unfair prejudice need be addressed in this section.

to pay overtime wages plainly constitutes a protected activity. *See McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir. 1996) (assertion of FLSA rights, such as making a formal complaint, is protected activity). Perna's employment was terminated shortly after the complaint was made, and the amendments to the complaint draw a causal (and temporal) connection between the two actions. Therefore, on the most basic level, Perna satisfies the initial requirements necessary to bring a FLSA retaliation claim.

Following Perna's prefatory showing, the burden shifts to the County to produce a legitimate, nonretaliatory reason for Perna's termination; if it does so, the burden will shift back to Perna to show that the proffered rationale is pretextual. *See Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997). "An employee demonstrates pretext with evidence the employer's proffered reasons are so weak, implausible, or inconsistent a reasonable jury would not believe them. *Pacheco*, 365 F.3d at 1207. Here, assuming arguendo that the County can produce a nonretaliatory basis for Perna's firing, the Court finds he has provided sufficient evidence to support pretext, including the information in the Internal Affairs report and Phelps's declaration. Doc. 72 at 4-8; Doc. 62-13 (Internal Affairs report); Doc. 55 at 3-4 (Phelps's Declaration). This evidence suggests retaliation and casts doubt on the County's explanation that Perna performed inadequately as a cadet.

Finally, notwithstanding the County's argument to the contrary, Sheriff Gonzales's direct knowledge of the DOL complaint does not prevent Perna from moving forward with his retaliation claim. *See* Doc. 62 at 18-19. "[I]t is still possible for a plaintiff to establish pretext where the ultimate decision-maker is a mere 'cat's paw' or rubber stamp for the subordinate's [unlawful conduct]." *Dorris v. It's Greek to Me, Inc.*, No. 2:19-cv-02445, 2021 U.S. Dist. LEXIS 111258, at *20 (D. Kan. June 14, 2021). Perna is not required to provide direct evidence that Sheriff Gonzales

was personally aware of the events precipitating Perna's firing—even if that would be the ideal means of proving FLSA retaliation. *See Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015) ("[A]n employer who acts without discriminatory intent can be liable for a subordinate's discriminatory animus if the employer uncritically relies on the biased subordinate's reports and recommendations in deciding to take adverse employment action.").

### B. Prejudice

The County argues it is unfairly prejudiced because the "timing of Plaintiff's proposed amendments . . . unfairly affects Defendant in terms of preparing its defense to the amendment[.]" Doc. 62 at 20. Specifically, the County stated at the March 1, 2024, motion hearing that it would need to conduct additional discovery if the motion to amend was granted. Doc. 111 at 39:8-16, 41:18-23. To the extent this additional discovery can be equated with prejudice, the harm is easily remedied. Pursuant to its discussion on the record, the Court will (for now) grant the joint motion to stay the proceedings while waiting for substantive law from the New Mexico Supreme Court regarding the NMWPA. *Id.* at 61:24-62:5. During this time, the County may seek leave to depose or re-depose witnesses or to engage in other discovery necessary to address factual issues arising from Perna's amended pleading. *Id.* at 61:6-10.

### CONCLUSION

For the reasons outlined above, Perna's motion to amend, Doc. 52, is granted. For the reasons stated on the record at the March 1, 2024, hearing, the Court will grant the portion of the parties' Joint Motion to Vacate Hearing and for Stay, Doc. 103, that pertains to a stay. The County may request additional discovery germane to the newly-added facts and claims in Perna's amended pleading. It is so ordered.

_____

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA